Defendant-appellant Todd Andrew Nickol appeals his conviction and sentence from the Fairfield County Court of Common Pleas on one count of robbery and one count of abduction. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On November 21, 1997, the Fairfield County Grand Jury indicted appellant on one count of kidnapping, in violation of R.C. 2905.01(A)(2) or (3); one count of kidnapping, in violation of R.C. 2905.01(B)(2); and one count of aggravated robbery, in violation of R.C. 2911.01(A)(3). At his arraignment on November 25, 1997, appellant entered a plea of not guilty to the indictment. Subsequently, on December 22, 1997, appellant filed a plea of not guilty by reason of insanity. The trial court ordered a psychiatric examination, and scheduled a competency hearing for February 12, 1998. Via Judgment Entry dated February 18, 1998, the trial court found appellant competent to stand trial. The matter proceeded to trial on May 26, 1998.
The following evidence was adduced at trial.
Yvonne Glines, appellant's sister, testified she asked appellant to assist her in installing a new bathroom floor in her home in early November, 1997. Appellant agreed and traveled from South Carolina, where he was employed as a construction worker, to Glines' home in Lancaster, Ohio.
Glines stated appellant drank six or seven beers while he completed the floor on November 15, 1997. That evening, appellant, Glines, and Glines fiancé, Phil Buck, went to the Fairview Inn, a local tavern, to celebrate appellant's birthday and his completion of the job. While at the Fairview, appellant drank approximately twelve beers plus three shots of Yagermeister liquor. At approximately midnight, Glines suggested they go to the Orange Carpet, another bar. The Orange Carpet was closed, and the three continued to Mannequins Night Club, which is located down the street from the Orange Carpet.
While at Mannequins, Glines observed appellant drink four or five beers and three shots. When the bartender announced last call, appellant walked to the bar and Glines went to the restroom. Glines testified, upon her return, she told appellant to finish his drink because she and Buck were ready to leave. Appellant informed his sister she and Buck could leave without him because he had a ride home, indicating to a group of three or four women with whom he was standing. Yvonne questioned, "You sure you're going to get a ride home?" Appellant reiterated, and the women confirmed, he had a ride home. Glines testified one of the women was Dawn McClung.
Dawn McClung testified, on the evening of November 15, 1997, she accompanied friends to the Tavern at the Mill to listen to a band. Later that evening, McClung and her friends proceeded to the Orange Carpet to listen to another band. Between 8:30 p.m. on November 15, 1997, and 2:00 a.m. on November 16, 1997, McClung drank approximately six or seven Zima beverages. When the Orange Carpet closed at approximately 2:00 a.m. on November 16, 1997, McClung left her friends and proceeded to Mannequins to find another friend, John McAnespie, who is a disc jockey at the club.
Upon entering Mannequins, McClung began looking for McAnespie. During her attempt to locate her friend, McClung noticed appellant, who was seated at the bar, staring at her in the mirrored wall. McClung realized she did not know appellant, and continued to look for McAnespie. She eventually found him and the two spoke regarding a recent miscommunication. McClung also conversed with several other friends.
At approximately 2:48 a.m., McClung left Mannequins and walked alone to her vehicle. She entered her vehicle and immediately closed the door. While McClung turned to place her purse on the passenger's seat, she heard a slap on the window and the driver's door open. Appellant grabbed her and forced her by the neck over to the passenger's seat. As appellant threw McClung, she dropped the keys to the automobile on the floor. Appellant grabbed McClung by the back of neck and demanded, "Hand me the fucking keys, bitch. You're getting me out of here." When McClung pleaded, "Take the car. Just take the car," appellant responded, "Give me the keys or I'll kill you."
In an attempt to buy time, McClung rummaged through the trash her children had left on the floor of the front seat. McClung handed appellant empty soda pop cans, toys, papers, and whatever else she could find as she continued to plead with appellant to take her vehicle and let her go. The victim kicked and fought with appellant. McClung attempted to gouge appellant's eyes, but he grabbed her hand and violently bit her pinky finger. Appellant placed McClung in a headlock with his right arm and started the car with his left hand. When a flashlight was shown into the vehicle, appellant started to drive away from the scene. Appellant drove down an alley which dead ended into a brick wall. While appellant turned the vehicle around, McClung jumped out of the car and rolled to the ground. A police officer ran past her, followed by a cruiser.
Keith Rosier, a Fairfield County deputy sheriff, was stopped at a red light at the intersection of Main Street and Columbus Street in Lancaster, Ohio, when he observed a man and a woman on the sidewalk behind Mannequins. Because it appeared the couple was in the midst of an argument, Rosier radioed the Lancaster Police Department and advised the dispatcher of his observations.
Brian Lowe, an officer with the Lancaster Police Department, was on duty during the early morning hours of November 16, 1997, when he was dispatched to the area of Mannequins in order to investigate a report of two suspicious people. Patrolman Greg Seesholtz was also dispatched to the area. When the officers arrived at the scene, they noticed a struggle going on inside a black Chevrolet station wagon. Patrolman Seesholtz approached the vehicle on the passenger's side, while Officer Lowe approached on the driver's side. Lowe shone his flashlight into the car and asked the driver to step out of the vehicle. Inside the vehicle, Lowe observed the driver, who was later identified as appellant, with his left hand on the steering wheel and his right hand around the neck of the passenger, who was later identified as McClung. Immediately thereafter, the driver fled in an eastbound direction down an alley. Both officers returned to their cruisers and pursued the vehicle. After a brief pursuit, the officers apprehended appellant and placed him in custody.
Officer Seesholtz brought McClung to the cruiser in order for her to identify appellant. The officers located McAnespie inside Mannequins and he escorted McClung to the hospital where she was treated for her injuries and released.
After the presentation of all the evidence and closing arguments, the trial court instructed the jury on the elements of kidnapping and abduction, as a lesser included offense of kidnapping, as well as aggravated robbery and robbery, as a lesser included offense of aggravated robbery. Appellant's trial counsel did not object to the instructions. After deliberations, the jury returned a verdict of guilty of one count of abduction and one count of robbery. The trial court sentenced appellant to a period of four years on the abduction charge and a period of three years on the robbery count. The trial court ordered the sentences to be served consecutive to each other. During sentencing, the trial court dismissed the second count of kidnaping.
It is from these convictions and sentences appellant prosecutes this appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY CONCERNING ABDUCTION AS A LESSER INCLUDED OFFENSE OF KIDNAPING.
 II. THE TRIAL COURT ERRED IN ENTERING JUDGMENTS OF CONVICTION FOR BOTH ROBBERY AND ABDUCTION, WHICH UNDER THE CIRCUMSTANCES OF THE CASE ARE ALLIED OFFENSES OF SIMILAR IMPORT.
 III. APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant contends the trial court erred in instructing the jury on abduction as a lesser included offense of kidnapping.
The test for whether an offense is a lesser included offense of another is set forth in State v. Deem (1988), 40 Ohio St.3d 205, as follows:
 An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
 Id. at paragraph 3 of the syllabus.
Appellant was indicted on kidnapping, in violation of R.C.2905.01 (A)(2) or (3), which provides:
 (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
 (2) To facilitate the commission of any felony or flight thereafter;
 (3) To terrorize, or to inflict serious physical harm on the victim or another;
* * *
The jury convicted appellant of abduction, a violation of R.C. 2905.02, which provides:
 (A) No person, without privilege to do so, shall knowingly do any of the following:
 (1) By force or threat, remove another from the place where the other person is found;
 (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear;
* * *
Upon application of the Deem test, we find abduction is not a lesser included offense of kidnapping. As statutorily defined, kidnapping, but not abduction, may be committed entirely by means of deception. Because kidnapping can be committed without abduction also being committed, the second prong of the Deem
test is not satisfied. See, State v. Fleming (1996), 114 Ohio App.3d 294.
However, the record reflects appellant failed to object to the instruction on abduction as a lesser included offense of kidnapping. Crim. R. 30(A) provides:
 On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.
We find appellant's failure to object to the trial court's giving of an instruction on abduction as a lesser included offense of kidnapping constitutes a waiver of any claimed error relative to said instruction. Accordingly, we must review the matter under the plain error doctrine.
In State v. Cooperrider (1983), 4 Ohio St.3d 226, the Ohio Supreme Court discussed the application of the plain error doctrine in the context of an allegedly erroneous jury instruction. The Supreme Court stated:
. . . an erroneous jury instruction "does not constitute a plain error or defect under Crim. R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." (Citation omitted). Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice. (Citation omitted).
 Id. at 227.
Upon review of the entire record in this matter, we cannot conclude, but for the error, the outcome of the trial clearly would have been otherwise. Although the trial court erred in instructing the jury on abduction as a lesser included offense of kidnapping, such error does not constitute plain error.
The record not only reflects appellant failed to object to the "lesser included" instruction, but also reveals appellant knowingly acquiesced to the charge. After charging the jury, the trial court had the following conversation with the prosecutor and appellant's trial counsel:
 THE COURT: Are there any additions or corrections to the charge on behalf of the State?
MR. LANDEFELD[PROSECUTOR]: No, Your Honor.
THE COURT: On behalf of the Defense?
 MR. ROGERS [APPELLANT'S COUNSEL]: Sounded good to me.
THE COURT: Thank you, gentlemen.
MR. ROGERS: You got it all covered.
Transcript of the Proceedings at 340.
It is well accepted law a party is not permitted to complain of an error which said party invited or induced the trial court to make. In State v. Kollar (1915), 93 Ohio St. 89 the Ohio Supreme Court stated:
 The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.
Because appellant expressly approved the jury instruction, thereby inducing the error, he cannot now take advantage of such error on appeal.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred in entering judgment of convictions for robbery and abduction when, under the circumstances of the case, the offenses are allied offenses of similar import.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In Newark v. Vazirani (1990), 48 Ohio St.3d 81, the Ohio Supreme Court set forth a two-tiered test to determine whether two or more crimes are allied offenses of similar import. Id.
at 83. "In the first step, the elements of the two crimes are compared". Id. "If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step." Id.
"In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses". Id. "If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses".Id. (Citations omitted).
R.C. 2911.02 sets forth the elements of robbery:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
* * *
 (3) Use or threaten the immediate use of force against another.
Relative to this charge, the jury found appellant knowingly obtained or attempted to obtain, or fled after obtaining a 1980 station wagon owned by Dawn McClung without her consent and for the purpose of depriving her of that property, and appellant did so by using or threatening the immediate use of force against Dawn McClung.
The elements of the offense of abduction are set forthsupra. Relative to this charge, the jury found appellant, without privilege to do so, knowingly, by force or threat of force, removed Dawn McClung from the place where she was found or, by force or threat of force, retained Dawn McClung of her liberty under circumstances which created a risk of physical harm to her or placed her in fear.
We find, in the instant action, the robbery and the abduction were committed with separate animus; therefore, fall within the scope of R.C. 2941.25(B). The robbery was complete when appellant entered McClung's automobile by forcing the victim into the passenger's seat and with intent to steal the vehicle. After committing the acts constituting the robbery, appellant placed McClung in a headlock and repeatedly threatened to kill her if she did not comply with his demands. Thereafter, appellant drove away without releasing McClung.
Although appellant's initial restraint of McClung was incidental to the robbery, appellant's subsequent conduct of placing the victim in a headlock, threatening to kill her, and eventually driving off with her still in the vehicle, subjected her to a substantial increase in the risk of harm he would inflict. Accordingly, we find the offenses of robbery and abduction are not allied offenses of similar import under the facts of the case sub judice and the trial court did not err in entering judgments of convictions for both offenses.
Appellant's second assignment of error is overruled.
 III
Appellant's third assignment of error raises a manifest weight of the evidence claim.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v.Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin
(1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
At trial, McClung testified, while she prepared to drive home, appellant entered her vehicle and forced her over to the passenger's seat. McClung also recalled the force appellant asserted upon her and the threats he made against her as he attempted to steal her car. Officers Lowe and Seesholtz observed appellant holding McClung in a headlock as he drove her vehicle down an alley.
Based upon the facts noted supra, and the entire record, we do not find the jury's verdict was against the manifest weight of the evidence. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. McClung's testimony alone was sufficient to support the convictions. The officers' testimony inferentially corroborates the victim's testimony. We do not disagree